# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAYMOND MERRIWEATHER, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 06 CV 2127 |
| v. | ) |
| | ) Hon. Charles R. Norgle |
| CHICAGO TRANSIT AUTHORITY, | ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Raymond Merriweather ("Plaintiff") sues Defendant Chicago Transit Authority (the "CTA") for violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Before the Court is the CTA's Motion for Summary Judgment. For the following reasons, the motion is granted.

## I. BACKGROUND

### A. Failure to File a Response

As an initial matter, the Court notes that on September 13, 2012, the CTA filed the instant motion, which included notice to pro se Plaintiff of the consequences of failing to respond to the motion. On September 20, 2012, the Court ordered Plaintiff to file a response on or before October 26, 2012. On September 21, 2012, Plaintiff filed a motion seeking an extension of time in which to file his response. The Court granted the motion on September 27, 2012, extending Plaintiff's time within which to file a response to on or before December 3, 2012. To date, there has been no communication with the Court and no pleadings filed on behalf of Plaintiff. Because Plaintiff failed to respond to the instant motion, all material facts set forth by the CTA

are deemed admitted. N.D. Ill. LR 56.1(b)(3)(C); see also Johnny Blastoff, Inc. v. L.A. Rams Football Co., 188 F.3d 427, 439 (7th Cir. 1999).

**B. Facts**

Plaintiff began working as a full-time Bus Operator for the CTA in 1994. In 2002, Plaintiff began working out of the 103rd Street Garage, driving a number of different bus routes. On November 20, 2003, Plaintiff arrived to work and went to pick up his paycheck. The CTA employee handing out the paychecks was unable to locate Plaintiff's check. Plaintiff wanted to speak to a manager, but was unable to do so because all of the managers were in a meeting. In response, Plaintiff became "irate" and drove a bus from the garage and parked it in the middle of the Bus Terminal, effectively blocking the entrance to the garage. Def.'s Statement of Facts ¶ 18. Plaintiff claims that he did this because he was frustrated about not getting his paycheck and he "was trying to get attention." Def.'s Statement of Facts Ex. B, at p. 43:10. Sometime thereafter, Plaintiff was found crying on the bus by a manager. For twenty minutes, the manager attempted to get Plaintiff to leave the bus to talk in the manager's office. Once Plaintiff left the bus, he did not go to the manager's office, but got in his car and left the 103rd Street Garage. The following day, on November 21, 2003, Plaintiff took sick leave due to stress. Plaintiff indicated that he was ready to return to work on December 18, 2003. Before resuming his duties, Plaintiff was sent to ComPsych, an institution that performs mental health evaluations for CTA employees. Plaintiff was found fit for duty and was allowed to return to work.

Approximately one month later, on January 24, 2004, Plaintiff had another incident at the 103rd Street Garage. On that day, a supervisor, Mattie Taylor ("Taylor"), noticed Plaintiff in the garage at a time when he was supposed to be driving one of his bus routes. Taylor asked Plaintiff what was wrong and he responded by telling her that, "[She] need[s] to go on and get

some business" and he also called her an "old woman." Def.'s Statement of Facts ¶ 29. When another employee told Plaintiff not to speak to Taylor like that, Plaintiff said, "fuck her." Id. After this exchange, Taylor had Plaintiff fill out an incident report. While he was filling out the report, witnesses heard Plaintiff threaten the managers, and Manager Mike Taylor in particular. Plaintiff said words to the effect of, "if he messes with me . . . fair warning I will be back. I am just giving fair warning." Id. Ex. J, at p. 1365.

As a result of the incident on January 24, 2004, Plaintiff was suspended and an investigation was conducted by managers Mike Taylor and Rosalio Garcia. The investigation included, *inter alia*, evaluations of Plaintiff showing that his work was unsatisfactory, incident reports, a Miscellaneous Incident Report from Supervisor Mattie Taylor, witness statements from Clerk Thelma Abbington and Clerk Corey Stepney, and a report by Plaintiff explaining his version of the incident. The managers assembled the documents from the investigation into a Discharge Packet to be presented to the General Manager of the 103rd Street Garage, Mary Beth Cobbleigh-Beal ("Beal").

Only the General Manager of a garage has the authority to discharge bus drivers. Subordinate managers can only impose lesser disciplinary action over their employees. When a manager thinks that the discharge of an employee is appropriate, he or she prepares a Discharge Packet for the General Manager. Beal became the General Manager of the 103rd Street Garage in January of 2004.

After reviewing the Discharge Packet and manager recommendations, Beal concluded the following regarding Plaintiff's incident on January 24, 2004:

> He [Plaintiff] was expected simply to drive his bus and do his job, instead he gets into a conflict with the supervisor [Mattie Taylor]. He threatens the supervisor in the presence of two clerks. He threatens the safety of the manager. He swears at the supervisor. He delays service for the employees because other people would

3

> have depended on him. He delays service for the customers. He refuses to follow the basic instructions that the supervisor gives him. He wants to be argumentative with the supervisor. He's insolent to the supervisor . . . he was abusive to her. He used obscene language. He did not conduct himself in accordance with the rules and regulations of the [CTA].

Def.'s Statement of Facts Ex. F, at pp. 178:11-179:1. However, before discharging Plaintiff, Beal conducted a discharge hearing with Plaintiff to allow him to explain his actions. The hearing began on February 18, 2004. During the hearing, Plaintiff began to talk about the incident that occurred on November 20, 2003. Beal was unaware of that incident so she stopped the hearing so that she could investigate it further.

Following her investigation, Beal continued with the discharge hearing on February 20, 2004. Plaintiff denied that he did anything wrong and instead insisted that all of the witnesses were lying. During the hearing, Plaintiff cried at various times, "which Beal found to be disturbing." Def.'s Statement of Facts ¶ 40. As a result of his behavior at the hearing, Beal referred Plaintiff for a "Special Medical" to evaluate his fitness for duty. Id. ¶ 41.

Plaintiff was evaluated by Dr. Stephen W. Robinson ("Dr. Robinson") on March 2, 2004. Dr. Robinson found that Plaintiff was unfit for duty. Subsequently, Plaintiff was referred to Dr. Sherrie C. Godbolt ("Dr. Godbolt") who evaluated Plaintiff on March 23, 2004 and May 10, 2004. Dr. Godbolt found Plaintiff fit following both evaluations, however, Plaintiff still had not returned to work. Frustrated that he had not yet returned to work after being found fit, Plaintiff filed an EEOC Charge of Discrimination on June 3, 2004.

A CTA physician, Dr. Irma Realiza, evaluated Plaintiff on July 15, 2004 and found him fit to return to work. Plaintiff returned to work on July 21, 2004, and the discharge hearing before Beal recommenced. Plaintiff once again denied all wrongdoing and reiterated that he thought that the witnesses were lying. At the end of the hearing, Beal informed Plaintiff that he

was discharged and provided him with a Discharge Notice. Beal found that Plaintiff's discharge was appropriate because he violated the Corrective Action Guidelines and numerous rules in the CTA's General Rule Book, including Rule 14 which prohibits "Conduct unbecoming an employee" and "Disrespect to supervisory personnel, co-workers, or the public." Def.'s Statement of Facts Ex. G, at 922. The Corrective Action Guidelines for the CTA provide that "immediate discharge may result depending on the severity of the violation and circumstances." Def.'s Statement of Facts Ex. H, at 868. Beal further found that the witnesses to the incident on January 24, 2004 were telling the truth, and that Plaintiff was not.

Plaintiff filed his initial complaint in this Court on April 17, 2006. On January 4, 2007, Plaintiff filed an amended complaint. Plaintiff's state law claim for intentional infliction of emotional distress was dismissed on April 5, 2007, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's remaining claims allege: (1) that he was discriminated against in violation of the ADA because he was "regarded as" disabled, and (2) that he was discharged in retaliation for filing a complaint about another bus driver approximately one year before he was fired in violation of Title VII.

Beal testified that, at the time that she discharged Plaintiff, she was unaware that he had previously filed a complaint about another bus driver. Beal further testified that she did not consider Plaintiff's EEOC Charge when she decided to discharge him on July 21, 2004. Plaintiff admits that he has no evidence as to why Beal decided to discharge him, stating that, "I [Plaintiff] don't know. Truthfully, I don't know. I don't know what was in her [Beal's] mind, and maybe she did perceive that they [the witnesses] were telling the truth and, you know, I was not telling the truth." Def.'s Statement of Facts Ex. B, at p. 153:8-11. The instant motion is now before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 656 (7th Cir. 2011) (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

"Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). If the nonmovant "is unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322).

## B. Discrimination

### *1. Qualified Individual With a Disability*

Pursuant to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). As an initial matter, Plaintiff must show that he is a qualified individual who is disabled under the ADA. "Under the ADA, disability means: '(1) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) [a] record of such an impairment; or (3) [b]eing regarded as having such an impairment.'" Steffen v. Donahoe, 680 F.3d 738, 743 (7th Cir. 2012) (quoting 29 C.F.R. § 1630.2(g) (2007)). Plaintiff consistently denies that he suffers from any disability or handicap. Rather, Plaintiff alleges only that the CTA regarded him as crazy or mentally impaired and discriminated against him accordingly.

Because Plaintiff filed his complaint prior to the 2009 amendments to the ADA, the Court considers only the version of the statute in effect at the time of the relevant conduct. Id. at 744-45. To be "regarded as" disabled under the ADA, an employer must "believe that an employee is substantially limited in a major life activity." Id. at 745. "Major life activities include, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting . . . concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i).

"In determining whether a disability 'substantially limits' a person from performing a major life activity, courts consider 'the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 554 (7th Cir. 2011) (quoting Kampmier v. Emeritus Corp., 472

F.3d 930, 937 (7th Cir. 2007)). Short term or temporary restrictions are generally not considered to be substantially limiting. Id.

The CTA argues that it never regarded Plaintiff as being disabled or being substantially limited in a major life activity. The evidence shows that the CTA sent Plaintiff for a Special Medical referral as a result of his disturbing behavior at the discharge hearing in February of 2004. However, following various mental evaluations, the CTA's own physician found Plaintiff fit for duty on July 15, 2004, and Plaintiff was allowed to return to work on July 21, 2004. Therefore, the evidence shows that the duration of the alleged mental impairment, if any, was short term as Plaintiff was only absent from work for approximately five months, and only deemed unfit for a period of twenty-one days. Furthermore, Plaintiff fails to show how the CTA regarded his alleged impairment as anything other than temporary, since it allowed him to return to work upon finding him fit for duty. See Brunker v. Schwan's Home Service, Inc., 583 F.3d 1004, 1008 (7th Cir. 2009) ("An impairment is a disability only when its impact is permanent or long term . . . . [I]ntermittent impairments, which are not disabilities, include a broken leg, appendicitis, or isolated bouts of depression." (emphasis added) (internal quotation marks and citations omitted)). Accordingly, Plaintiff is not a qualified individual with a disability under the ADA because the evidence shows that the CTA did not regard him as being disabled as the term is defined by the ADA.

In any event, even if the Court considered Plaintiff to be a qualified individual with a disability pursuant to the ADA, Plaintiff fails to provide any evidence under either the direct or indirect method that the CTA discriminated against him on the basis of his alleged disability. To survive summary judgment under either method, Plaintiff "must create at least an inference of illegal discrimination." Greene v. Potter, 557 F.3d 765, 769 (7th Cir. 2009) (internal citation and

quotation marks omitted); see also Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999) ("Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of discrimination may be drawn.").

### *2. Direct Method*

Under the direct method, Plaintiff "can present either direct or circumstantial evidence to meet [his] burden." Dickerson v. Bd. of Trs., 657 F.3d 595, 601 (7th Cir. 2011). Direct evidence requires an admission by an employer and circumstantial evidence "allows a jury to infer intentional discrimination." Id. Plaintiff fails to provide any evidence that he was discriminated against because of his alleged disability. Instead, the uncontroverted evidence shows that Plaintiff was discharged for violation of CTA rules. Therefore, Plaintiff fails to prove discrimination through the direct method of proof.

### *3. Indirect Method*

Under the indirect burden-shifting method prescribed by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), Plaintiff must establish a prima facie case of disability discrimination by showing that "(1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." Id. If Plaintiff demonstrates prima facie discrimination, the burden shifts to the CTA to "produce a legitimate, noninvidious reason for its actions." Atanus v. Perry, 520 F.3d 662, 672 (7th Cir. 2008). If the CTA is able to provide such a reason, "the burden then shifts back to [Plaintiff] to show that the [CTA's] reasons 'are false and only a pretext for discrimination.'" Id. (quoting Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997)).

It is undisputed that Plaintiff suffered an adverse employment action when he was discharged from his employment. However, Plaintiff fails to present any evidence as to the remaining elements of his prima facie case. Further, Plaintiff fails to show that the CTA's reason for discharge—namely, misconduct in violation of CTA rules following the incident on January 24, 2004—is pretextual. Because Plaintiff fails to establish a prima facie case of disability discrimination under either the direct or indirect method, summary judgment is granted to the CTA on this claim.

## C. Retaliation

Plaintiff also alleges that the CTA fired him in retaliation for complaining about another CTA employee in early 2003 and for filing an EEOC charge on June 3, 2004. Title VII provides that, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To defeat a motion for summary judgment on a retaliation claim, Plaintiff must provide "sufficient evidence of retaliation through either a direct or indirect method." Silverman v. Bd. of Educ., 637 F.3d 729, 740 (7th Cir. 2011).

### 1. Direct Method

Under the direct method of proof, Plaintiff must be able to show through either direct or circumstantial evidence: "(1) that [he] engaged in a statutorily protected activity; (2) that [he] suffered a materially adverse action by [his] employer; and (3) there was a causal link between the two." Id. While direct evidence "essentially requires an admission by the employer . . . circumstantial evidence of retaliation may include suspicious timing, ambiguous statements,

behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Harper v. C.R. Eng., Inc., 687 F.3d 297, 307 (7th Cir. 2012) (internal quotation marks and citation omitted).

It is undisputed that Plaintiff's discharge constitutes an adverse employment action. However, the CTA argues that Plaintiff fails to show that he was engaged in protected activity. It is true that Plaintiff fails to present any evidence as to the existence of the complaint that he allegedly made against a co-worker approximately a year before the January 24, 2004 incident. Even if he produced evidence regarding the alleged complaint, the uncontroverted facts show that Beal, who was the ultimate decision-maker with regard to Plaintiff's discharge, was unaware of any such complaint at the time that she discharged him.

However, despite Plaintiff's failure to show that his alleged prior complaint against a co-worker constitutes protected activity, the filing of his EEOC charge on June 3, 2004 constitutes protected activity. See Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006) (finding that the filing of a charge of discrimination with the EEOC constitutes statutorily protected activity). While Plaintiff satisfies the first two factors, he fails to show a causal link between them. The uncontroverted facts establish that Beal did not take Plaintiff's EEOC charge into account when she decided to discharge him. Therefore, Plaintiff fails to establish his retaliation claim under the direct method.

### 2. *Indirect Method*

Under the indirect method, a prima facie case of retaliation is established by showing that: "(1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations, i.e., he was performing his job satisfactorily; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not

11

engage in the statutorily protected activity." Harper, 687 F.3d at 309. "Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason" for the retaliation. Id. "If the defendant meets its burden, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual." Id.

As discussed above, Plaintiff establishes the first and third factors. However, Plaintiff fails to provide any evidence to show that he was meeting his employer's legitimate expectations or that he was treated less favorably than a similarly situated employee who was not engaged in protected activity. To the contrary, the evidence suggests that Plaintiff was not meeting his employer's legitimate expectations based on the incidents on November 20, 2003 and January 24, 2004. In any event, the CTA has presented a non-discriminatory reason for Plaintiff's discharge that Plaintiff fails to show is pretextual. The CTA maintains that Plaintiff was discharged following the January 24, 2004 incident for violation of CTA rules. Indeed, the undisputed evidence shows that Plaintiff conceded during his deposition that it was possible that Beal decided to discharge him because she believed the witnesses' accounts of the incident on January 24, 2004, and not his account. Because Plaintiff fails to establish a prima facie case of retaliation through either the direct or indirect method, summary judgment is granted to the CTA on the retaliation claim.

## III. CONCLUSION

For the foregoing reasons, the Court enters summary judgment for the CTA on all of Plaintiff's remaining claims.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 8, 2013